Appeal from a judgment of the Erie County Court (Michael L. D’Amico, J.), rendered April 22, 2015. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree.
 

 It is hereby ordered that the judgment so appealed from is unanimously affirmed.
 

 Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that he was deprived of a fair suppression hearing by prosecu-torial misconduct. Defendant failed to preserve that contention for our review (see People v Chinn, 104 AD3d 1167, 1168-1169 [4th Dept 2013], lv denied 21 NY3d 1014 [2013]). We nonetheless note that, contrary to the People’s contention, the prosecutor engaged in misconduct during the suppression hearing by repeatedly “ ‘forcing defendant on cross-examination to characterize [the] prosecution witnesses as liars’ ” (People v McClary, 85 AD3d 1622, 1624 [4th Dept 2011]), which is a tactic that we have condemned in numerous cases (see e.g. People v Shinebarger, 110 AD3d 1478, 1480 [4th Dept 2013], lv denied 24 NY3d 1088 [2014]; People v Washington, 89 AD3d 1516, 1516-1517 [4th Dept 2011], lv denied 18 NY3d 963 [2012]; People v Paul, 212 AD2d 1020, 1021 [4th Dept 1995], lv denied 85 NY2d 912 [1995]; People v Edwards, 167 AD2d 864, 864 [4th Dept 1990], lv denied 77 NY2d 877 [1991]). In any event, we conclude that the improper questioning would not require reversal here inasmuch as the record establishes that “the prosecutor’s misconduct did not substantially prejudice defendant” (Shinebarger, 110 AD3d at 1480; see Edwards, 167 AD2d at 864).
 

 We reject defendant’s further contention that County Court erred in refusing to suppress a handgun seized by the police from defendant’s person and defendant’s statements to the police. “The suppression court’s credibility determinations and choice between conflicting inferences to be drawn from the proof are granted deference and will not be disturbed unless unsupported by the record” and, here, we perceive no basis to disturb the court’s determination to credit the testimony of the police officers and to discredit most of the conflicting testimony of defendant (People v Hale, 130 AD3d 1540, 1541 [4th Dept 2015] [internal quotation marks omitted], lv denied 26 NY3d 1088 [2015], reconsideration denied 27 NY3d 998 [2016]; see People v Barfield, 21 AD3d 1396, 1396-1397 [4th Dept 2005], lv denied 5 NY3d 881 [2005]).
 

 Contrary to defendant’s contention, the police conduct “was justified in its inception and at every subsequent stage of the encounter” (People v Nicodemus, 247 AD2d 833, 835 [4th Dept 1998], lv denied 92 NY2d 858 [1998], citing People v De Bour, 40 NY2d 210, 215 [1976]). The evidence at the suppression hearing established that, while two police officers were on patrol in a high-crime area associated with gang activity, their attention was drawn to defendant, who was walking down the street, because he looked like a suspect contained in a set of mug shots carried by the officers. The officers immediately noticed that hanging out of defendant’s right jacket pocket was a sock containing a hard, “L shaped” object, which appeared to be the outline of a gun. Based upon their training and experience, including a similar incident in which a suspect was found in the same area with a gun secreted in a sock and briefings indicating that gang members were carrying weapons in that manner, both officers suspected that defendant possessed a gun. At a minimum, such circumstances provided the officers with the requisite objective, credible reason for subsequently approaching defendant in their patrol vehicle and asking him for identification (see People v Hollman, 79 NY2d 181, 190-191 [1992]; De Bour, 40 NY2d at 220). Defendant then reached into his sweat pants for his identification and, exhibiting nervous behavior, he “turned around blading himself” away from the officers and essentially spun around before he began walking toward the patrol vehicle. In considering the totality of the circumstances, we conclude that the officers had at least a “founded suspicion that criminal activity [was] afoot” when they exited the patrol vehicle and engaged in a common-law inquiry regarding what defendant had in his pocket (De Bour, 40 NY2d at 223; see People v Simmons, 133 AD3d 1275, 1276 [4th Dept 2015], lv denied 27 NY3d 1006 [2016]; People v Johnson, 129 AD3d 1516, 1517 [4th Dept 2015], lv denied 26 NY3d 1009 [2015]; People v Niles, 237 AD2d 537, 537-538 [2d Dept 1997], lv denied 90 NY2d 861 [1997]). When defendant responded that he had a handgun, the officers were entitled to seize it and to arrest defendant (see Johnson, 129 AD3d at 1517).
 

 Finally, the sentence is not unduly harsh or severe.
 

 Present—Peradotto, J.P., Carni, DeJoseph, Curran and Winslow, JJ.